Slip Op. 07-4

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                  :
SHANDONG HUARONG GENERAL          :
GROUP CORPORATION and             :
LIAONING MACHINERY IMPORT         :
& EXPORT CORPORATION,             :
                                  : Before: Richard K. Eaton, Judge
               Plaintiffs,        :
                                  : Court No. 01-00858
          v.                      :
                                  :
UNITED STATES,                    :
                                  :
               Defendant.         :
                                  :
```

MEMORANDUM OPINION

[United States Department of Commerce's Final Results of
Redetermination Pursuant to Court Remand sustained.]


                              Dated: January 9, 2007


*Hume & Associates, PC* (*Robert T. Hume*), for plaintiffs.


*Peter D. Keisler*, Assistant Attorney General, Civil Division,
United States Department of Justice; *David M. Cohen*, Director,
Commercial Litigation Branch, Civil Division, United States
Department of Justice; *Jeanne E. Davidson*, Deputy Director,
Commercial Litigation Branch, Civil Division, United States
Department of Justice (*Stephen C. Tosini*); *Ada E. Bosque*, United
States Department of Commerce Office of Chief Counsel for Import
Administration, of counsel, for defendant.


        Eaton, Judge: This matter is before the court following a

third remand to the United States Department of Commerce

("Commerce" or the "Department").[1]  In *Shandong Huarong General Group Corporation v. United States*, 29 CIT __, Slip Op. 05-129 (Sept. 27, 2005) (not published in the Federal Supplement) ("*Huarong III*"), the court remanded the Department's second remand determination in the ninth administrative review of the antidumping duty order covering the importation of heavy forged hand tools ("HFHTs") from the People's Republic of China ("PRC"). *See* HFHTs From the PRC, 66 Fed. Reg. 48,026 (ITA Sept. 17, 2001) (final determination) ("Final Results").  Plaintiffs Shandong Huarong General Group Corporation ("Huarong") and Liaoning Machinery Import & Export Corporation ("LMC") (collectively "plaintiffs" or the "Companies") challenged that determination with respect to the Department's decision to apply adverse facts available ("AFA") and to assign the Companies a 139.31 percent[2] dumping rate to their sales of bars and wedges.[3]  The court found

---

[1]     Ames True Temper, as *amicus curiae*, has filed comments to Commerce's remand results.

[2]     In the Final Results, both companies received the PRC-wide rate for this review of 47.88 percent.  *See* Final Results, 66 Fed. Reg. at 48,028, 48,030.

[3]     In cases where a respondent:

        (A) withholds information that has been
        requested by the administering authority or
        the Commission under [19 U.S.C. § 1677],

        (B) fails to provide such information by the
        deadlines for submission of the information
        or in the form and manner requested, subject
                                        (continued...)

that Commerce failed to support its selection of the 139.31

percent rate with substantial evidence, that the rate was

aberrational and punitive, and remanded the determination with

instructions for Commerce to select another justifiable rate.  On

the third remand, Commerce selected a rate of 47.88 percent to

apply as AFA.  *See* Final Results of Redetermination Pursuant to

Court Remand (ITA Mar. 3, 2006) ("Third Remand Determination") at

1.  The Companies now challenge the Department's selection on

remand of the 47.88 percent rate applicable to their sales of

bars and wedges.  Jurisdiction lies with 28 U.S.C. § 1581(c)

(2000) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2000).  For the

---

[3](...continued)
    to subsections (c)(1) and (e) of section
    1677m of this title,

    (C) significantly impedes a proceeding under
    this subtitle, or

    (D) provides such information but the
    information cannot be verified as provided in
    section 1677m(i) of this title,

    the administering authority and the
    Commission shall, subject to section 1677m(d)
    of this title, use the facts otherwise
    available in reaching the applicable
    determination under this subtitle.

19 U.S.C. § 1677e(a) (2000).

    If Commerce determines that a respondent has "failed to
cooperate by not acting to the best of its ability to comply with
a request for information," the Department may then "use an
inference that is adverse to the interests of that party in
selecting from among the facts otherwise available."
19 U.S.C. § 1677e(b).

following reasons, the court sustains Commerce's Third Remand Determination.

BACKGROUND

The facts of this case have been set forth adequately in the court's prior opinions. A brief discussion of the facts relevant to the instant action follows. In the Final Results, Commerce used AFA to set the Companies' dumping margins and assigned the Companies the PRC-wide rate of 47.88 percent for their sales of bars and wedges. *See* Final Results, 66 Fed. Reg. at 48,028. The court agreed that Commerce supported with substantial evidence its application of AFA to the Companies, but because it found that the Companies had demonstrated their independence from the PRC-wide entity, it remanded the Final Results and instructed Commerce to assign the Companies separate rates. *See Shandong Huarong Gen. Group Corp. v. United States*, 27 CIT 1568, 1596 (2003) (not published in the Federal Supplement) ("*Huarong I*"); *see also* Third Remand Determination at 5 ("Huarong received AFA, in part, because it failed to report certain transactions as being its own sales, rather than another company's sales, while LMC received AFA because certain transactions it reported as its own sales were, in fact, made by another company."). On remand, Commerce found that the Companies were entitled to separate rates and assigned each of them an individual rate of 139.31 percent.

That rate was the highest antidumping duty rate from any prior segment of the proceeding.  Because it found that the Department failed to justify its selection of the 139.31 percent rate, the court again remanded the matter.  *See Shandong Huarong Gen. Group Corp. v. United States*, 28 CIT __, __, Slip Op. 04-117 at 17–18 (Sept. 13, 2004) (not published in the Federal Supplement) ("*Huarong II*").

In accordance with the court's remand, the Department attempted to explain its decision to apply the 139.31 percent rate to the Companies' sales of bars and wedges, but the court found the effort insufficient.  *See Huarong III*, 29 CIT at __, Slip Op. 05-129 at 21–22.  Specifically, the court found the rate both aberrational and punitive, and further concluded that Commerce failed to support adequately the reasonableness and the relevance of that rate to the Companies' sales.  The court remanded the matter for a third time with instructions for the Department to choose from the following two rates: "(1) the Companies' rates from a previous review, with a built-in increase as a deterrent to non-compliance; or (2) a calculated rate that accurately reflects what the Companies' rates would have been had they cooperated, with a built-in increase as a deterrent to non-compliance."  *Id.* at __, Slip Op. 05-129 at 22.

In the Third Remand Determination, Commerce returned to the rate of 47.88 percent, which is both the country-wide rate in

this administrative review and the rate calculated for another company in the 1992–1993 administrative review.  *See* Third Remand Determination at 1, 4.  For the reasons that follow, the court sustains the selection of that rate.

STANDARD OF REVIEW

The court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Huaiyin Foreign Trade Corp. (30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  The existence of substantial evidence is determined "by considering the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"  *Id.* (quoting *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

DISCUSSION

When selecting a rate to apply as AFA, "Commerce must do more than assume any prior calculated margin for the industry is reliable and relevant."  *Ferro Union, Inc. v. United States*, 23

CIT 178, 204, 44 F. Supp. 2d 1310, 1334 (1999).  Indeed, "[i]n order to comply with the statute and the [Statement of Administrative Action]'s statement that corroborated information is probative information, Commerce must assure itself that the margin it applies is relevant, and not outdated, or lacking a rational relationship to [the respondent]."  *Id.* at 205, 44 F. Supp. 2d at 1335.  In its previous remand determination, Commerce did not meet the standard set forth in *Ferro Union*.  In particular, Commerce failed to demonstrate either the reasonableness or the relevance of the 139.31 percent rate to the Companies.  *See Huarong III*, 29 CIT at __, Slip Op. 05-129 at 21; *see also* 19 U.S.C. § 1677e(c).[4]  The court stated that the law "requires that an assigned rate relate to the company to which it is assigned."  *Huarong III*, 29 CIT at __, Slip Op. 05-129 at 11.  In addition, the court stated that where a rate from a previous review is selected as AFA, if that prior rate was a weighted-average margin, "then the preferred method would be to use the

---

[4]     Pursuant to that provision:

> When the administering authority or the
> Commission relies on secondary information
> rather than on information obtained in the
> course of an investigation or review, the
> administering authority or the Commission, as
> the case may be, shall, to the extent
> practicable, corroborate that information
> from independent sources that are reasonably
> at their disposal.

19 U.S.C. § 1677e(c).

Companies' own weighted-average margins for the same review."
*Id.* at __, Slip Op. 05-129 at 17.  Moreover, the court found that
the 139.31 percent rate selected was aberrational and punitive.
*Id.* at __, Slip Op. 05-129 at 21.  Thus, in order to be
sustained, Commerce's current selection of the 47.88 percent AFA
rate must be both reliable and relevant to the Companies.

In plaintiffs' view, Commerce failed to corroborate its
selection of the 47.88 percent rate in accordance with 19 U.S.C.
§ 1677e(c).  *See* Pls.' Comments on Dep't of Commerce's Final
Results of Redetermination Pursuant to Court Remand at 7.
Specifically, plaintiffs claim that: (1) Commerce did not
establish the reliability of the 47.88 percent rate because it
failed to support the rate with an independent source; (2)
Commerce failed to explain how a 47.88 percent rate that was
applied to an unrelated company in a prior review was relevant to
the Companies here; and (3) Commerce incorrectly employed a
transaction-specific comparison method to determine the deterrent
amount in contravention of the court's instructions.  *See id.* at
7, 9, 11–15.

Despite plaintiffs' contentions, the court finds that
Commerce has explained adequately the reliability and relevance
of the 47.88 percent AFA rate with respect to the Companies'
sales of bars and wedges, and finds the method employed by
Commerce in reaching its conclusion reasonable.  Here, Commerce

selected 47.88 percent, the PRC-wide rate for the underlying
review and the rate that was applied to Fujian Machinery &
Equipment Import & Export Corporation ("FMEC") during the
1992-1993 administrative review of the bars/wedges order, as AFA.
*See* Third Remand Determination at 4.  It selected this rate only
after first finding that, had it cooperated, LMC would have
received a rate of 27.18 percent and, likewise, Huarong would
have been subject to a rate of 34.00 percent.  *See id.*  Commerce
based this finding on the highest previously calculated rates for
each company.  *See id.*  Commerce then chose to apply the 47.88
percent rate, in part, because that rate, having been previously
verified, was reliable and because the resulting 13.88 percent
increase in Huarong's rate and the 20.70 percent increase in
LMC's rate was sufficient to deter any future non-compliance.
*See id.* at 9.

    An AFA rate must be both reliable and bear a rational
relationship to the respondent.  *See Huarong III*, 30 CIT at __,
Slip Op. 05-129 at 11-12; *see also F. LLI De Cecco Di Fillippo
Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032
(Fed. Cir. 2000) ("It is clear from Congress's imposition of the
corroboration requirement in 19 U.S.C. § 1677e(c) that it
intended for an adverse facts available rate to be a reasonably
accurate estimate of the respondent's actual rate, albeit with
some built-in increase intended as a deterrent to non-

compliance."). The court finds that Commerce has sufficiently demonstrated the reliability of the 47.88 percent rate. According to Commerce:

> In accordance with our normal practice, the Department reviewed all potential rates in the history of the proceeding which could be applied as an AFA rate in the underlying segment. For this remand determination, the Department has selected as AFA the 47.88 percent calculated for [FMEC], during the 1992–1993 administrative review of the bars/wedges order. This rate was based upon verified data and has not been judicially invalidated.

Third Remand Determination at 4 (citations omitted). Commerce further stated:

> [U]nlike other types of information, such as input costs or selling expenses, there are no independent sources for calculated dumping margins. Thus, in an administrative review, if the Department chooses as total AFA a dumping margin from a prior segment of the proceeding, it is not necessary to question the reliability of the margin. In the instant case, the rate selected as AFA, 47.88 percent, was calculated using verified information provided by FMEC during the 1992–1993 administrative review of the bars/wedges order. Furthermore, this rate was not judicially invalidated, and we have no new information that would lead us to reconsider the reliability of the rate being used in this case.

*Id.* at 5–6 (citations omitted).

In other words, by using a rate from a previous investigation, Commerce sought to satisfy the reliability standard found in 19 U.S.C. § 1677e(c). Thus, the court

concludes that Commerce established the rate's reliability as required by statute, in part, because the Department selected a rate that was based on verified information provided by FMEC in the 1992–1993 review.

In addition, the court finds that Commerce demonstrated the relevance of the 47.88 percent rate to both Huarong and LMC. In this case, to satisfy the court's concerns with respect to the relevance of the rate to the Companies, Commerce first estimated what the Companies' rates would have been had they cooperated.

> [F]or non-cooperative respondents, a conservative estimate of the lower bound [sic] of what the respondent's margin would be had it cooperated is the highest-weighted average margin calculated for that respondent in a prior review. In this case, using the conservative assumption, the Department expects that, at a minimum, Huarong and LMC would have received dumping margins of 34.00 and 27.18 percent, respectively, had they cooperated.

Third Remand Determination at 9. The Department then considered an amount to be added to those rates to deter future non-compliance. To test the relevance of that additional amount to the Companies, Commerce examined the Companies' transaction-specific margins. *See id.* ("These transaction-specific margins are actual margins calculated for the respondent in question and demonstrate the highest margins of dumping made by the respondent when selling subject merchandise in the U.S. market."). That is, to determine an appropriate amount to add to the Companies'

previously calculated rates, Commerce compared the Companies'

highest transaction-specific margins to the 47.88 percent rate.

Commerce made the comparison for each company.  After

comparing Huarong's highest transaction-specific margins to

available verified rates, Commerce found that the 47.88 percent

rate was relevant.  Specifically, Commerce found:

> (1) all of Huarong's positive transaction-specific margins are above 47.88 percent, the quantity of these transactions is not insignificant, and these sales are not aberrational; (2) there are no other previously calculated, weighted-average rates from which to select as AFA that are greater than 47.88 percent but less than the range of transaction-specific margins; and (3) selecting a rate lower than 47.88 percent would not act as an effective deterrent in light of the high transaction-specific margins.  For these reasons, the transaction-specific margins are evidence that the 47.88 percent rate is relevant to Huarong and provides the appropriate deterrent to future non-compliance.

*Id.* at 10.  Similarly, with respect to LMC, Commerce concluded:

> 21 percent of LMC's transaction-specific margins were positive (i.e., greater than zero) and that all of these positive transaction-specific margins were high, although not quite as high as Huarong's positive transaction-specific margins. . . . [T]he Department is applying the same AFA rate to LMC as it is to Huarong because LMC identified certain transactions in the underlying review as its own sales, when, in fact, they were not. . . .  For this redetermination, we find that selecting 47.88 as the AFA rate is also relevant for the following reasons relating to transaction-specific margins: (1) all of LMC's positive transaction-specific margins are above 47.88

> percent, the quantity of these transactions is not insignificant, and these sales are not aberrational; (2) there are no other previously calculated, weighted average rates from which to select as AFA that are greater than 47.88 percent but less than the range of transaction-specific margins; and (3) selecting a rate lower than 47.88 percent would not act as an effective deterrent in light of the high transaction-specific margins.[5]

*Id.* at 10-11 (citations omitted). Therefore, Commerce determined that based on a comparison of the 47.88 percent rate to the Companies' transaction-specific margins, the 13.88 percent increase for Huarong and the 20.70 percent increase for LMC would serve as an appropriate deterrent to future non-compliance.

To further justify the relevance of these rates, the Department examined the variation in the Companies' margins over prior reviews. With respect to Huarong, Commerce observed that the dumping margin assigned to that company for its sales of bars and wedges in the 1996-1997 review was a calculated 34.00 percent. *See* Third Remand Determination at 12. In the 1997-1998 review, Huarong received a calculated rate of 1.27 percent. *See id.* Huarong then received a calculated 27.28 percent rate in the 1998-1999 review, the review immediately preceding the underlying review. *See id.* Likewise, Commerce found that LMC has also

---

[5] While what Commerce says is true, it is worth noting that the vast majority of the Companies' transaction-specific margins were calculated to be 0.0 percent. *See Huraong III*, 29 CIT at __, Slip Op. 05-129 at 17 (finding that over 83 percent of the transactions were at zero margins).

received varying dumping margins from review to review. Specifically, in the 1996–1997 review, when LMC was first assigned a calculated rate for its sales of bars and wedges, it received a 2.94 percent rate. *See id.* In the 1997–1998 review, LMC was assigned a 0.0 percent rate. *See id.* That changed, however, in the 1998–1999 review, where LMC was assigned a calculated rate of 27.18 percent. *See id.*

Thus, Commerce's chosen rate is not dramatically different from those fluctuating rates that the Companies previously received. That is, it is not unreasonable for Commerce to allot to Huarong an approximate thirteen-percentage-point increase from its highest calculated rate of 34.00 percent as a deterrent, and it is equally permissible for Commerce to add a twenty-percentage-point increase over LMC's highest previously calculated rate as a deterrent. Thus, unlike in *Huarong III*, where the court found a more than 110 percentage point increase to be aberrational and punitive, the 47.88 percent rate is not so high as to be aberrational.

Having considered plaintiffs' arguments with respect to the relevance of the chosen rate and Commerce's explanation of its decision to apply a rate of 47.88 percent to the Companies' sales of bars and wedges, the court finds that: (1) Commerce established the reliability and relevance of the rate to both Huarong and LMC; and (2) the method by which Commerce reached its

conclusion was reasonable.  Therefore, the court sustains the Third Remand Determination.


CONCLUSION

Based on the foregoing, the court sustains Commerce's Third Remand Determination and its selection of 47.88 percent as the rate to be applied to Huarong and LMC as AFA for their sales of bars and wedges.  Judgment shall be entered accordingly.


                                        /s/Richard K. Eaton
                                         Richard K. Eaton


Dated:    January 9, 2007
          New York, New York

Slip Op. 07-4

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                    :
SHANDONG HUARONG GENERAL            :
GROUP CORPORATION and               :
LIAONING MACHINERY IMPORT           :
& EXPORT CORPORATION,               :
                                    : Before: Richard K. Eaton, Judge
            Plaintiffs,             :
                                    : Court No. 01-00858
       v.                           :
                                    :
UNITED STATES,                      :
                                    :
            Defendant.              :
                                    :
```

<u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED that the United States Department of Commerce's Final Results of Redetermination Pursuant to Court Remand *Shandong Huarong General Group Corporation and Liaoning Machinery Import & Export Corporation v. United States*, Court No. 01-00858, are sustained.

                                   /s/Richard K. Eaton
                                    Richard K. Eaton

Dated: January 9, 2007
       New York, New York