**Slip Op. 05-124**

# UNITED STATE COURT OF INTERNATIONAL TRADE
## BEFORE: CARMAN, JUDGE

|  |  |
|---|---|
| PAM, S.P.A. & <br> JCM, LTD., <br><br>                    **Plaintiff,** <br>      **v.** <br><br> UNITED STATES, <br><br>                    **Defendant,** <br><br> **and** <br><br> **A. ZEREGA'S & SONS,** <br> **DAKOTA GROWERS PASTA CO.,** <br> **NEW WORLD PASTA CO. &** <br> **AMERICAN ITALIAN PASTA CO.,** <br><br>                    **Defendant-** <br>                    **Intervenors.** | **Court No. 04-00082** |

[Plaintiffs' motions for judgment on the agency record are granted.]

    *Law Offices of David L. Simon* (*David L. Simon*), Washington, D.C., for Plaintiff PAM, S.p.A.

    *Rodriguez, O'Donnell, Ross, Fuerst, Gonzalez, Williams & England, PC* (*Lara A. Austrins, Michael A. Johnson*), Chicago, Illinois, for Plaintiff JCM, Ltd.

    *Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Jeanne M. Davidson*, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Ada E. Bosque, Patricia M. McCarthy, Stefan Shaibani*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Rachael E. Wenthold*, Of Counsel, Office of Chief Counsel, U.S. Department of Commerce, for Defendant.

    *Collier Shannon Scott, PLLC* (*Paul C. Rosenthal, David C. Smith, Jr.*), Washington, D.C., for Defendant-Intervenors.

Dated: September 14, 2005

OPINION

**CARMAN, Judge:** Plaintiffs PAM, S.p.A. ("PAM") and JCM, Ltd. ("JCM")[1] appeal the

United States Department of Commerce's ("Commerce" or "Defendant") final results of *Certain*

*Pasta from Italy*, 69 Fed. Reg. 6,255 (Dep't Commerce Feb. 10, 2004) (final determination)

[hereinafter *Final Results*].  Plaintiffs challenge the initiation of the review, the application of

adverse facts and selection of the highest antidumping margin.  Plaintiffs move for judgment

upon the agency record.  For the following reasons, this Court grants Plaintiffs' motions for

judgment on the agency record, holds void ab initio the initiation of the sixth antidumping

administrative review as to PAM, and directs Commerce to rescind the sixth antidumping

administrative review as to PAM.

PROCEDURAL HISTORY

This Court's Preliminary Injunction Order of March 15, 2004, enjoined the government

from liquidating subject entries through completion of the appellate process.  This Court did not

sign the proposed order that was submitted with Plaintiffs' motion but rather issued an order

enjoining the government from liquidating subject entries during the pendency of this litigation

and ordering "that the entries subject to this injunction shall be liquidated in accordance with the

final decision in the action as provided in 19 U.S.C. § 1516a(e) [].  Accordingly, liquidation shall

---

[1] PAM is a producer of pasta, and JCM is an importer of pasta supplied by PAM.  For simplicity's sake, this Court will jointly refer to PAM and JCM as "Plaintiffs" unless specifically stated.

remain suspended under this injunction during the pendency of this litigation." *PAM, S.p.A. v. United States*, No. 04-00082 (CIT Mar. 15, 2004) (order granting preliminary injunction).

On March 29, 2004, Defendant filed a Motion for Partial Reconsideration of this Court's preliminary injunction order. The parties submitted a Joint Stipulation of Facts on April 30, 2004. On June 10, 2004, this Court issued an opinion denying Defendant's request for reconsideration of the preliminary injunction and holding that proper duration of the preliminary injunction was through completion of the appellate process. *See PAM, S.p.A. v. United States*, 28 CIT __, 347 F. Supp. 2d 1362 (2004). This Court presently considers Plaintiffs' motions for judgment upon the agency record, Defendant and Defendant-Intervenors' responses and Plaintiffs' replies.

## BACKGROUND

On July 1, 2002, Commerce published *Certain Pasta from Italy*, 67 Fed. Reg. 44,172, 44,173 (Dep't Commerce July 1, 2002) (opportunity to request administrative review). In response, members of the domestic pasta industry, who are defendant-intervenors in this case, submitted a request for administrative review of eight respondent companies, including PAM. (*See* Public Record ("P.R.") at 11.) PAM itself did not request a review. Petitioners served their request for an administrative review upon the respondent companies, except for PAM. On August 27, 2002, Commerce published in the Federal Register a notice of initiation of its sixth antidumping administrative review covering the period of July 1, 2001, through June 30, 2002, listing PAM and twelve other companies as respondents. *Certain Pasta from Italy*, 67 Red. Reg. 55,000, 55,002 (Dep't Commerce Aug. 27, 2002) (initiation of antidumping duty investigation).

On August 28, 2002, counsel for PAM entered appearance in the administrative review.  (P.R. at 16.)  On August 29, 2002, Commerce sent out questionnaires to the respondents, including PAM.  On September 3, 2002, PAM notified Commerce via letter that PAM was not properly served with a request for review and requested an extension of time to file its answer.  (P.R. at 33.)  A series of requests for and granting of extensions ensued, with PAM responding to the questionnaires but continuing to object to lack of service.  (*See, e.g.*, P.R. at 18, 33, 98.)  In May 2003, Commerce conducted verification and found that PAM underreported its home sales in its answers to the questionnaires.  (P.R. at 305.)

On August 7, 2003, Commerce published its preliminary results of the sixth antidumping administrative review finding that total adverse facts were appropriate due to PAM's underreporting and applying the highest calculated antidumping margin of 45.49 percent to imports of PAM's pasta covered by the scope of the review.  *Certain Pasta from Italy*, 68 Fed. Reg. 47,020 (Dep't Commerce Aug. 7, 2003) (preliminary results of antidumping administrative review).  On February 10, 2004, Commerce published its final results, which affirmed its decisions in the preliminary results.  *Final Results*, 69 Fed. Reg. at 6,255.  Plaintiff timely appealed the final results in this Court.

## PARTIES' CONTENTIONS

### A.    Plaintiffs' Contentions

Plaintiffs contend that the review should be void ab initio because petitioners failed to serve their request in violation of regulation 19 C.F.R. § 351.303(f)(3)(ii) (2002).  (Principal Br.

of Pl. for J. upon Agency R. ("PAM's Br.") at 1; Principal Br. of Pl. JCM, Ltd. in Supp. of Mot.

Pursuant to R. 56.2 for J. upon the Agency R. ("JCM's Br.") at 2-3.)  It is undisputed that

petitioners never served PAM.  (PAM's Br. at 5; Def.'s Mem. in Opp'n to Pls.' R. 56.2 Mot. for

J. upon the Agency R. ("Def.'s Opp'n") at 11.)  PAM repeatedly objected to this lack of service

and requested that Commerce rescind the review, but Commerce declined.  To preserve its rights,

PAM actively participated in the review.  (PAM's Br. at 5.)

Plaintiffs insist that Commerce must comply with its own rules.  (PAM's Br. at 13;

JCM's Br. at 17-18.)  PAM bases its argument on the "express nature of the rule and fact that

[the regulation] contains its own penalty for failure to comply" rather than on a showing a

prejudice.  (PAM's Br. at 7 n.3.)   PAM posits that Commerce would not promulgate an

"unimportant" regulation.  (*Id.* at 9.)  According to PAM, the importance of this service

requirement is further supported by "the fact that the rule stands alone in its own subsection of

the regulations."  (*Id.* at 9.)  PAM submits this service rule is "clear and unambiguous," stating

that if the petitioner neither serves the exporter nor "make[s] a reasonable attempt to do so then

[Commerce] may not accept the request for review."  (*Id.* at 5.)  JCM notes that there was no

"reasonable attempt" made by petitioners to cure the service defect.  (JCM's Br. at 17; *see also*

Reply Br. of PAM S.p.A. ("PAM's Reply") at 6.)  PAM further asserts this service rule confers

benefit on the "requestee," not Commerce.  (PAM's Br. at 8; PAM's Reply at 3.)

Plaintiffs also argue that Commerce erred in applying adverse facts available to PAM.

(PAM's Br. at 23; JCM's Br. at 38.)  PAM admits that it omitted sales of a material quantity.

(PAM's Br. at 24.)  PAM avers, however, that the omissions do not justify application of adverse

facts available because some sales were omitted on the advice of counsel and other omissions

resulted from a minor clerical error in its computer program. (*Id.*) Moreover, PAM argues that

some omitted sales were "outside the ordinary course of business." (*Id.* at 24-25.) Because it

"used its best efforts to answer the questionnaire," PAM asserts that the application of adverse

facts available is unlawful. (*Id.* at 33.)

### B.     Defendant's Contentions

Defendant contends that it has "the discretion to relax or modify its procedural rules for

the orderly transaction of business before it." (Def.'s Opp'n at 8.) According to Defendant, the

regulation at issue confers no important procedural benefit, and Plaintiff was not substantially

prejudiced by violation of the regulation. (*Id.* at 12-13 (*citing Am. Farm Lines v. Black Ball

Freight Serv.*, 397 U.S. 532, 538-39 (1970).) Therefore, Commerce argues that its

"determination not to rescind its administrative review of PAM is supported by substantial

evidence and in accordance with law." (Def.'s Opp'n at 13.) Defendant also argues it acted

within its discretion because Commerce listed PAM in the notice of initiation in the Federal

Register and granted PAM extensions to respond to the questionnaires. (Def.'s Opp'n at 15.)

Defendant calculates that lack of service deprived PAM of no more than seventeen days of

preparation time but afforded twenty-nine additional days through extensions. (*Id.* at 18.) Thus,

Commerce suggests that PAM "suffered no prejudice as a result of the deficiency in service."

(*Id.* at 15.)

It is undisputed that PAM omitted a "material quantity" of its sales. (PAM's Br. at 24.)

Commerce claims that it discovered during verification that PAM only reported about one-third

of its home market sales. (Def.'s Opp'n at 24; Reply Br. of Pl. JCM, Ltd. in Supp. of Mot.

Pursuant to R. 56.2 for J. upon the Agency R. ("JCM's Reply") at 8-9 n.3.)  Based upon this underreporting, Defendant contends that PAM did not "cooperate to the best of its ability in responding to Commerce's questionnaires," and thus, Commerce is statutorily entitled to resort to adverse facts available.  (Def.'s Opp'n at 25.)  Defendant also asserts that application of the highest calculated margin to "uncooperative respondents" is a well-established Commerce practice.  (*Id*. at 32.)  Defendant concludes that application of total adverse facts available and the resultant selection of the highest calculated margin was a proper exercise of its discretion.  (*Id*. at 34.)

### C.      Defendant-Intervenors' Contentions

Defendant-Intervenors concede they did not serve PAM.  (Resp. Br. of Def.-Intervenors ("Def.-Ints.' Resp.") at 1.)  Defendant-Intervenors explain that they mistakenly relied on a Commerce's service list from the immediately preceding segment in which PAM was not a participant.  (*Id*.)  Defendant-Intervenors contend that PAM should not be granted the equitable relief of retroactive rescission of the review because of "unclean hands" in that PAM itself failed to comply with certain procedural regulations.  (*Id*. at 11.)  Defendant-Intervenors' remaining contentions are essentially the same as Defendant's, have been duly considered, and need not be reiterated in their entirety.

### STANDARD OF REVIEW

In reviewing a challenge to Commerce's final determination in an antidumping administrative review, the Court will uphold Commerce's decision unless it is "unsupported by

substantial evidence on the record, or otherwise not in accordance with law . . . ." Tariff Act of 1930, § 516A(b)(1)(B) (codified as amended at 19 U.S.C. § 1516a(b)(1)(B)(i) (2000)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (citations omitted); *see also Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997). "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." *Ceramica Regiomontana, S.A. v. United States*, 10 CIT 399, 404-05, 636 F. Supp. 961 (1986) (citations omitted), *aff'd*, 810 F.2d 1137 (Fed. Cir. 1987).

In determining whether Commerce's interpretation and application of the antidumping statute is in accordance with law, this Court must consider "whether Congress has directly spoken to the precise question at issue," and if not, whether the agency's interpretation of the statute is reasonable. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). "[A] court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994) (citation omitted). Deference is based upon a recognition that Commerce has special expertise in administering the anti-dumping law. *Ta Chen Stainless Steel Pipe, Inc. v. United States,* 298 F.3d 1330, 1335 (Fed. Cir. 2002).

## DISCUSSION

The regulation at issue is 19 C.F.R. § 351.303(f)(3)(ii), which provides:

> (ii) *Request for review*.  In addition to the certificate of service requirements under paragraph (f)(2) of this section, an interested party that files with [Commerce] a request for . . . an administrative review, . . . <u>must serve</u> a copy of the request by personal service or first class mail on each exporter or producer specified in the request and on the petitioner by the end of the anniversary month or within ten days of filing the request for review, whichever is later.  If the interested party that files the request is unable to locate a particular exporter or producer, or the petitioner, the Secretary <u>may accept the request for review if</u> the Secretary is satisfied that <u>the party made a reasonable attempt to serve</u> a copy of the request on such person.

19 C.F.R. § 351.303(f)(3)(ii) (emphasis added).  When a regulation is at issue, "the starting point of our analysis must begin with the language of the regulation."  *Wards Cove Packing v. Nat'l Marine Fisheries*, 307 F.3d 1214, 1219 (9th Cir. 2002).  "[T]he plain meaning of a regulation governs."  *Id.* (*citing Christensen v. Harris County*, 529 U.S. 576, 588 (2000)).  If, however, the language is ambiguous, then deference to an agency's interpretation is warranted.  *Id.*  Upon analysis of the text of the regulation at issue, this Court finds that the regulation's language is clear and unambiguous; thus, its plain meaning governs.

Parsing this regulation, the first sentence provides that an interested party who files a request for review of certain companies with Commerce also must serve a copy of that request on the companies to be reviewed.  To that end, this regulation outlines with particularity the specifics of how – "by personal service or first class mail" – and when – "by the end of the anniversary month or within ten days of filing the request for review, whichever is later" – this

service should occur. This first sentence contains no textual ambiguity and provides no agency discretion. In contrast, Commerce did provide for conditional discretion in the second sentence, which states that the Secretary of Commerce has the discretion to accept the request and initiate the review upon satisfaction of a reasonable attempt at service. This provision incorporates discretion for Commerce to accept defective service, but that discretion is conditioned upon an attempt to serve. Words such as "satisfied" and "reasonable" typically invoke an agency's discretionary power, but in this case, this power is only triggered by an "attempt."

Applying this provision to the facts at hand, it is undisputed that there was no actual service, and the facts do not indicate, let alone support, any attempt to serve. Because there was no attempt, there was no triggering of agency discretion. Read in its entirety, this regulation implicitly provides that if there was no service or an attempt to serve, then Commerce should not accept a request for review. Consequently, this Court finds the service requirement of the first sentence remains in tact without being nullified by the discretionary power of the second sentence. If Commerce had intended discretionary power for the entire regulation, it should have promulgated this regulation with such language.

This Court finds unpersuasive Defendant's contention that Commerce can relax or modify its regulations in this case. Although acknowledging an agency may exercise discretion under certain facts, this Court notes that agency discretion is not unlimited. The United States Supreme Court ("Supreme Court") has recognized the general principle that "it is always within the discretion . . . of an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it," however, this discretion is limited to "when in a given case the ends of justice require it." *Am. Farm Lines*, 397 U.S. at 539 (quotation and

citation omitted). This Court finds that under the facts of the instant case, "the ends of justice" do not require Commerce discretion to relax or modify its procedural rules. In *American Farm Lines*, the Supreme Court found that the regulation at issue – a provision that empowered a commission with unfettered discretion in granting common carriers temporary authority to service needy areas – was "not intended primarily to confer important procedural benefits upon individuals." 397 U.S. at 538. Distinguishable from that regulation which empowered an agency to grant temporary authority in an emergency situation, this Court finds that the service requirement in regulation 19 C.F.R. § 351.303(f)(3)(ii) does indeed confer important procedural benefits upon the individual companies involved in normal antidumping administrative reviews.[2] Furthermore, this Court reasons that this regulation confers important procedural benefits not only on the individual companies being reviewed, but also on the transparency of the entire review process for all parties involved. This Court affirms its previous principle that compliance with procedures – whether filing with Commerce or serving individual companies – "create[s]

---

[2] This Court notes that *NSK Ltd. v. United States*, 28 CIT __, 346 F. Supp. 2d 1312 (CIT 2004), held that Commerce was within its discretion to continue the administrative review despite petitioner's faulty service. The same regulation was at issue in *NSK* as is here. However, *NSK* is distinguishable on numerous grounds. First, in *NSK* there was a key distinguishing fact – upon discovery of lack of service, petitioner attempted to cure its defective service by facsimile service. In light of this attempt, the *NSK* court found that service was "faulty," petitioner's attempt to cure reasonable, and agency discretion properly exercised. 346 F. Supp. 2d at 1325 ("The regulation provides an exception so that if the petitioner is unable to locate the exporter or producer, Commerce may still accept the request for review if it is 'satisfied that the party made a reasonable attempt to serve a copy of the request on such person.'") (*citing* 19 C.F.R. § 351.303(f)(3)(ii)). Under the *NSK* facts, the court allowed Commerce to invoke its discretion to proceed because an attempt took place. Although the *NSK* court suggests that this regulation was not intended to confer important procedural benefit, 346 F. Supp. 2d at 1325, and cites public policy reasons for allowing faulty service to proceed, *id.* at 1326, this discussion is merely dicta. Since the facts at bar present no service and no attempt at service, this Court finds that service cannot be deemed "faulty" as in the *NSK* case, but rather, service was nonexistent.

certainty and predictability for all parties" as to the process of administrative reviews. *Cosco Home & Office Prod. v. United States*, 28 CIT __, 350 F. Supp. 2d 1294, 1302 (CIT 2004).

It is well-established that an agency is bound by its regulations. The Supreme Court has noted this principle in a line of cases. "It is a familiar rule of administrative law that an agency must abide by its own regulations." *Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 654 (1990). In affirming this rule, the Supreme Court stated that "[s]o long as this regulation is extant it has the force of law." *United States v. Nixon*, 418 U.S. 683, 696 (1974); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954) ("so long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner"); *Service v. Dulles*, 354 U.S. 363, 388 (1957) ("so long as the Regulations remained unchanged [the Secretary could not] proceed without regard to them"); *Vitarrelli v. Seaton*, 359 U.S. 535, 540 (1959) ("the Secretary . . . was bound by the regulations which he himself had promulgated"). The United States Court of Appeals for the Federal Circuit ("Federal Circuit") has specifically applied this principle to Commerce. *See Torrington Co. v. United States*, 82 F.3d 1039, 1049 (Fed. Cir. 1996) ("Commerce, like other agencies, must follow its own regulations."); *see also Saddler v. Dep't of the Army*, 68 F.3d 1357, 1358 (Fed. Cir. 1995) (administrative board "must abide by its own regulation"); *Voge v. United States*, 844 F.2d 776, 779 (Fed. Cir. 1998) ("It has long been established that government officials must follow their own regulations . . . .").[3] This Court also affirms the familiar rule that an agency is

---

[3] This Court notes that the Federal Circuit has "reject[ed] the position that Commerce lost its authority to commence an administrative review because its delay in giving notice." *Oy v. United States,* 61 F.3d 866, 873 (Fed. Cir. 1995). The Federal Circuit affirmed this principle in *Intercargo Ins. Co. v. United States*, 83 F.3d 391, 396 (Fed. Cir. 1996). Those cases, however, are distinguishable from the facts of the instant case in that there was no "delay" here.

bound by its regulations. If Commerce wants to empower itself with unfettered discretion in regulation 19 C.F.R. § 351.303(f)(3)(ii), it may revoke or amend that regulation. *See, e.g., Nixon*, 418 U.S. at 696 (noting that a regulation can be amended); *Saddler*, 68 F.3d at 1358 ("[A] regulation is binding until such time as the [agency] substitutes a new rule in its place.") After promulgation and before amendment, however, the regulation remains operative. This Court finds that violation of the regulation is unsupported by substantial evidence on the record or otherwise not in accordance with law. Accordingly, this Court holds void ab initio the initiation of the sixth antidumping administrative review as to PAM.

Given the review as to PAM is void, this Court need not reach the issues of application of adverse facts and selection of the highest calculated margin.

---

Furthermore, Plaintiff in this case contends dual wrongs – petitioners did not serve and thus Commerce should not have initiated the review. It might have been a different discussion had only Commerce administratively defaulted. *See, e.g., Intercargo*, 83 F.3d at 396 ("administrative default by Commerce did not compel the court to revoke the antidumping finding"). This Court need not explore this scenario, however, as such is inapposite here.

**CONCLUSION**

For the foregoing reasons, this Court grants Plaintiffs' motions for judgment on the agency record, holds void ab initio the initiation of the sixth antidumping administrative review as to PAM, and directs Commerce to rescind the review as to PAM.

    /s/ Gregory W. Carman

Gregory W. Carman
Judge

Dated: September 14, 2005
New York, New York