**Slip Op. 08-75**

# UNITED STATES COURT OF INTERNATIONAL TRADE

PAM, S.P.A and JCM, LTD.,

    Plaintiffs,

  v.

UNITED STATES,

    Defendant,

  and

A. ZAREGA'S AND SONS, AMERICAN ITALIAN PASTA COMPANY, NEW WORLD PASTA COMPANY, and DAKOTA GROWERS PASTA COMPANY,

    Defendant-Intervenors.

**Before: Gregory W. Carman, Judge**

Court No. 04-00082

[*Commerce's remand results sustained.*]

Law Offices of David L. Simon (David L. Simon) for Plaintiff PAM, S.p.A.

Rodriguez O'Donnell Ross Fuerst Gonzales & Williams, PC (Thomas J. O'Donnell, Michael A. Johnson, and Lara A. Austrins) for Plaintiff JCM, Ltd.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jane C. Dempsey); of counsel, Mykhaylo A. Gryzlov, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Kelley, Drye & Warren, LLP (David C. Smith, Jr., and Paul C. Rosenthal) for Defendant-Intervenors.

July 9, 2008

**OPINION**

**CARMAN, JUDGE:**  This case returns to the Court following a remand to the United States

Department of Commerce pursuant to the Court's order in PAM, S.p.A. v. United

States, 31 CIT __, __, 495 F. Supp. 2d 1360, 1373 (2007) ("PAM II").  In that order, the

Court remanded in part the final results of the sixth administrative review of the

antidumping duty order on certain pasta from Italy, in which Commerce applied a

45.49% dumping margin to PAM, S.p.A. and JCM, Ltd. as an "adverse facts available"

rate.[1]  See Notice of Final Results of the Sixth Administrative Review of the

Antidumping Duty Order on Certain Pasta from Italy and Determination Not to Revoke

in Part, 69 Fed. Reg. 6,255 (Dep't Commerce Feb. 10, 2004) and associated Issues &

Decision Memorandum (together, "Final Results").  The Court held that, although

Commerce's decision to apply adverse facts available to PAM was supported by

substantial evidence on the record, the adverse facts available rate Commerce selected

for Plaintiffs had not been properly "corroborate[d]," as was required by statute.  See

PAM II, 31 CIT at __, 495 F. Supp. 2d at 1371; 19 U.S.C. §1677e(c) (2000).

    To corroborate the adverse facts available rate, on remand, Commerce compared

the 45.49% adverse facts available rate to transaction-specific dumping margins of PAM

---

[1]PAM is an Italian pasta manufacturer, and JCM imports pasta from PAM.  As a
result, JCM is subject to the same antidumping duty as is assessed against PAM.

from previous administrative reviews.[2] Commerce found multiple transactions with dumping margins at or above 45.49% and therefore concluded that the adverse facts available rate of 45.49% applied to PAM was adequately corroborated. Given that precedent from the United States Court of Appeals for the Federal Circuit holds that Commerce may corroborate an adverse facts available rate with a respondent's own transaction-specific dumping margins, Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002), the Court must conclude that Commerce has adequately corroborated the 45.49% dumping margin selected for PAM. As a result, the Court sustains the remand results as supported by substantial evidence and otherwise in accordance with law.

BACKGROUND

This case arises out of the sixth administrative review of the antidumping duty order on certain pasta from Italy. During an administrative review of an antidumping duty order, Commerce is charged with determining the dumping margins of individual respondents for the prior year. See 19 U.S.C. § 1675(a) (2000). To accomplish that, Commerce collects and puts on the record data from respondents and other interested

---

[2]A transaction-specific dumping margin compares a single U.S. sale to a single home-market sale (or, if none, a third-country market sale). The weighted average of the transaction-specific dumping margins is a respondent's overall dumping margin.

parties concerning the prices at which subject merchandise was sold during the period of review and the cost of producing such merchandise.  19 U.S.C. §§ 1677a, 1677b (2000). In some instances, necessary information will not be available on the record, as when a party withholds or fails to submit information in a timely manner, or when the submitted information cannot be verified.  In those instances, Commerce determines the dumping margins using "the facts otherwise available" on the record.  19 U.S.C. § 1677e(a).  Further, if Commerce determines that a respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]," the agency "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b).  The Court refers to this as applying "adverse facts available."

That is what occurred here.  In the Final Results to the administrative review, Commerce applied a dumping margin of 45.49% as an adverse facts available rate to PAM.  Commerce did so because PAM failed to report to Commerce about two-thirds of its home-market sales, and Commerce could not, therefore, verify the home-market database.[3]  Commerce determined that by failing to report most of its home-market

_____

[3]The unreported sales were the result of two mistakes, one inadvertent and one strategic.  One portion of the sales was not reported to Commerce because the computer program PAM used to extract the data from its accounting system was inadvertently not coded to pick up sales made from warehouses not owned by PAM.  The second portion of sales was excluded on advice of PAM's prior counsel, who believed the sales

(continued...)

sales, PAM "failed to cooperate by not acting to the best of its ability to comply with a request for information from [Commerce]," 19 U.S.C. § 1677e(b), and applied adverse facts available to PAM.

On appeal, Plaintiffs challenged both Commerce's authority to apply adverse facts available to the company, as well as the particular dumping margin selected (45.49%).[4]  While the Court sustained Commerce's decision to apply adverse facts available to PAM, as supported by substantial evidence on the record and otherwise in accordance with law, the Court held that the agency had not properly corroborated the 45.49% adverse facts available rate, as was required by statute.  PAM II, 31 CIT at __, 495 F. Supp. 2d at 1362-63.

The adverse facts available rate Commerce selected for PAM was a dumping margin assigned to another uncooperative respondent, Barilla, as adverse facts available

---

[3](...continued)
to have been made outside the ordinary course of trade, and therefore not reportable. For a more detailed account of the reporting mistakes, see PAM II, 31 CIT at __, 495 F. Supp. 2d at 1363-64.

[4]PAM also argued that the Final Results were void because the domestic company petitioners failed to give notice to PAM of their requests to initiate an administrative review.  The Court initially agreed with PAM, but was reversed by the Court of Appeals for the Federal Circuit, which held that PAM was not prejudiced by the lack of notice.  See PAM, S.p.A. v. United States, 29 CIT __, __, 395 F. Supp. 2d 1337, 1345 (2005) ("PAM I") rev'd, 463 F.3d 1345 (Fed. Cir. 2006).

in the first administrative review.[5] The origin of the dumping margin is significant in that the margin was not related to PAM: it was not calculated for PAM, or based on data submitted by PAM. Commerce purported to corroborate the dumping margin by comparing it to transaction-specific margins of other respondents during the period of review. The Court found Commerce's actions deficient to corroborate the adverse facts available rate because "Commerce did not explain how other respondents' transaction specific margins were related to PAM's dumping activity during the period of review." PAM II, 31 CIT at __, 495 F. Supp. 2d at 1372. The Court explained that "Commerce must select an adverse facts available margin that is a 'reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase as a deterrent to non-compliance." Id. (quoting F.LLI de Cecco di Filippos Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000)). As a result, the Court remanded the Final Result to Commerce to select a properly corroborated adverse facts available rate for PAM.

---

[5]To calculate the rate, Commerce used a domestic price list of Barilla's as a proxy for the home-market price and U.S. import statistics as a proxy for the U.S. price. World Finer Foods, Inc. v. United States, 24 CIT 1235, 1235, 120 F. Supp. 2d 1131, 1132 (2000). Comparing the proxies, Commerce calculated individual dumping margins for three categories of pasta. The individual dumping margins were 39.63%, 60.09%, and 63.36%. World Finer Foods, 24 CIT at 1236, 120 F. Supp. 2d at 1132. While Commerce selected the highest of the three calculations, 63.36%, as Barilla's adverse facts available rate, the court reduced Barilla's adverse facts available dumping margin to 45.49%, a simple average of the three individual dumping margins. World Finer Foods, 24 CIT at 1238, 120 F. Supp. 2d at 1134.

On remand, Commerce selected the same 45.49% adverse facts available rate, but corroborated the rate using data from PAM itself. Commerce compared the 45.49% dumping margin to transaction-specific margins of PAM from the fourth administrative review (the most recent review in which PAM participated, prior to the review at issue). Commerce stated that it found "dozens" of transaction-specific margins at or above 45.49%, "with the highest margin being several times higher than the [adverse facts available] rate" applied to PAM. (Final Remand Determination 5.)

Though Plaintiffs do not dispute Commerce's finding that dozens of PAM's transaction-specific dumping margins from the fourth administrative review were at or above 45.49%, they argue that Commerce's corroboration is nonetheless invalid. Plaintiffs contend that the sales used to calculate the transaction-specific dumping margins are "statistical outliers" that do not represent PAM's actual level of dumping during the period of review of the fourth administrative review. (Confid. Comments of Pl. PAM S.p.A. Concerning Commerce Dep't Final Remand Determ'n ("PAM Remand Br.") 3; accord Comments of Pl. JCM, Ltd. on Final Remand ("JCM Remand Br.") 3 (arguing that Commerce "cherry-picked" sales).) Plaintiff PAM argues that transaction-specific margins at or above 45.49% were the exception rather than the rule in the fourth administrative review, as shown by the fact that PAM's weighted dumping margin for

that period was 4.10%.[6] (PAM Remand Br. 8.)  Plaintiffs thus argue that the adverse

facts available rate selected by Commerce has not been properly corroborated, and ask

the Court to remand the remand results to Commerce to do it again.

### JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to review final results of administrative reviews

pursuant to 28 U.S.C. § 1581(c) (2000).  When reviewing the final results of an

administrative review, and any associated remand determinations, the Court must

sustain Commerce's determinations, findings, or conclusions unless they are

"unsupported by substantial evidence on the record, or otherwise not in accordance

with law."  19 U.S.C. § 1516a(b)(1)(B)(i) (2000).  "More specifically, when reviewing

whether Commerce's actions are unsupported by substantial evidence, the Court

assesses whether the agency action is 'unreasonable' given the record as a whole."

Mittal Steel Galati S.A. v. United States, 31 CIT __, Slip Op. 07-73 at 2-3 (May 14, 2007)

(citing Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006)).

---

[6]Plaintiff JCM adds that PAM's dumping margins for the years surrounding the sixth administrative review were all around 5% (1998-1999: 5.04%; 1999-2000: 4.10%; 2000-2001: no review; 2001-2002: 45.49% (proposed); and 2002-2003: 4.78%).  (JCM Remand Br. 2.)

## DISCUSSION

The only question before the Court is whether Commerce properly corroborated the 45.49% dumping margin it applied to PAM as adverse facts available. In the case of an uncooperative respondent, Commerce has "discretion to choose which sources and facts it will rely on to support an adverse inference." F.LLI de Cecco, 216 F.3d at 1032. However, when Commerce "relies on secondary information rather than on information obtained in the course of the investigation or review, [Commerce] shall, to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal." 19 U.S.C. § 1677e(c). The corroboration requirement is included in the statute to ensure that an adverse facts available rate is "a reasonably accurate estimate of the respondents actual rate, albeit with some built-in increase as a deterrent to non-compliance." F.LLI de Cecco, 216 F.3d at 1032. It is not within Commerce's discretion "to select unreasonably high rates with no relationship to the respondent's actual dumping margin." Id.

On remand, Commerce compared the adverse facts available rate selected with PAM's own transaction-specific dumping margins from the fourth administrative review, which was the most recent review in which PAM participated.[7] Commerce

---

[7]On remand, Commerce maintained its disagreement with the Court's determination that Commerce had not adequately corroborated the 45.49% dumping margin in the Final Results. (Final Remand Determination 3.) However, Commerce did

(continued...)

found dozens of transaction-specific margins at or above the adverse facts available rate of 45.49%. (See Final Remand Determination 5.)

This method of corroboration was sustained by the Court of Appeals for the Federal Circuit in Ta Chen, 298 F.3d 1330. In that case, Commerce compared the adverse facts available dumping margin to a transaction-specific margin of the respondent from a previous administrative review. The Ta Chen court found that the adverse facts available rate was corroborated "by actual sales data, and Ta Chen [the respondent] admits that it is reflective of some, albeit a small portion, of Ta Chen's actual sales." Id. at 1339. The court said that "Commerce acts within its discretion [in selecting an adverse facts available rate] so long as the rate chosen has a relationship to the actual sales information available." Id. at 1340.

Plaintiffs cannot prevail on their argument that Commerce did not adequately corroborate the adverse facts available margin because the transaction-specific margins relied upon by Commerce reflect only a small portion of PAM's sales from the fourth

_____

[7](...continued)
not specify (1) if it believed the Court's conclusion to be incorrect that Commerce must tie the adverse facts available dumping margin to the particular respondent to corroborate the margin, or (2) if Commerce believed that, as a factual matter, it had sufficiently done so in the Final Results. Because Commerce did not present any reasoning for its position, the Court cannot evaluate the validity of the objection, except to refer Commerce to the prior opinion, which discusses this issue in depth. See PAM II, 31 CIT at __, 495 F. Supp. 2d at 1371-73. In any event, on remand Commerce did follow the Court's order to corroborate any adverse facts available rate selected with evidence of PAM's own dumping activity.

administrative review.  When faced with a similar argument, the <u>Ta Chen</u> court rejected the contention that Commerce could not rely on a small number of transaction-specific dumping margins to corroborate an adverse facts available margin.  The court stated that "it is undisputed that Ta Chen made a sale with a 30.95% dumping margin [the adverse facts available rate applied to Ta Chen]."  <u>Ta Chen</u>, 298 F.3d at 1339.  The court went on to state that the adverse facts available margin was adequately corroborated with Ta Chen's sales data because "it is reflective of some, albeit a small portion, of Ta Chen's actual sales."  <u>Id.</u>  Because the <u>Ta Chen</u> court affirmed Commerce's selection of an adverse facts available rate in the face of the same argument made by Plaintiffs here, the Court is bound by that precedent.  Accordingly, the Court must sustain Commerce's selection of a 45.49% adverse facts available dumping margin for PAM.

This opinion should not be read as an endorsement of Commerce's action.  The Court is troubled by Commerce's decision to apply an adverse facts available dumping margin that is nine times higher than PAM's calculated dumping margins for the years surrounding this administrative review.   However, the Court believes itself to be constrained by the <u>Ta Chen</u> decision.  Absent that decision, the 45.49% dumping margin assigned to PAM might be construed as the sort of "punitive" adverse facts available dumping margin that is prohibited.  <u>See</u> <u>F.LLI de Cecco</u>, 216 F.3d at 1032 ("[T]he

purpose of section 1677e(b) is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins").


**CONCLUSION**

In the remand results, Commerce adequately corroborated the adverse facts available rate applied to PAM with transaction-specific dumping margins for PAM from a previous administrative review. As a result, the Court sustains the Final Remand Determination as being supported by substantial evidence on the record and otherwise in accordance with law. The Court will issue judgment for Commerce separately.


          ___/s/_Gregory_W._Carman__
             Gregory W. Carman

Dated: July 9, 2008
    New York, New York