NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THE CHAMBERLAIN GROUP, INC.,**
*Appellant*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**NORTEK, INC., NORTEK SECURITY & CONTROL LLC, FKA LINEAR, LLC, GTO ACCESS SYSTEMS, LLC, FKA GATES THAT OPEN, LLC,**
*Intervenors*

-------------------------------------------------

**NORTEK, INC., NORTEK SECURITY & CONTROL LLC, FKA LINEAR, LLC, GTO ACCESS SYSTEMS, LLC, FKA GATES THAT OPEN, LLC,**
*Appellants*

**v.**

**INTERNATIONAL TRADE COMMISSION,**
*Appellee*

**THE CHAMBERLAIN GROUP, INC.,**
*Intervenor*

---

2020-1965, 2021-1829

————————————

Appeals from the United States International Trade Commission in Investigation No. 337-TA-1118.

————————————

Decided:  April 27, 2023

————————————

JAMES MURPHY DOWD, Wilmer Cutler Pickering Hale and Dorr LLP, Los Angeles, CA, argued for appellant. Also represented by DAVID CHARLES MARCUS.

CARL PAUL BRETSCHER, Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for appellee.  Also represented by DOMINIC L. BIANCHI, WAYNE W. HERRINGTON, SIDNEY A. ROSENZWEIG.

EVAN SKINNER DAY, Perkins Coie, LLP, San Diego, CA, argued for cross-appellants.  Also represented by MATTHEW COOK BERNSTEIN; DAN L. BAGATELL, Hanover, NH; JAMES B. COUGHLAN, Washington, DC; ANDREW DUFRESNE, Madison, WI.

————————————

Before STOLL, SCHALL, and STARK, *Circuit Judges*.

STARK*, Circuit Judge.*

The Chamberlain Group, Inc. ("Chamberlain") filed a complaint with the International Trade Commission ("Commission") against Nortek, Inc., Nortek Security & Control LLC, and GTO Access Systems LLC (collectively, "Nortek"), alleging that Nortek's importation, sale for importation, or sale after importation of movable barrier operator systems and components thereof violated section 337 of the Tariff Act of 1920, 19 U.S.C. § 1337. Specifically, Chamberlain alleged that certain of Nortek's garage door

openers infringed U.S. Patent Nos. 6,741,052 ("'052 patent"), 8,587,404 ("'404 patent"), and 7,755,223 ("'223 patent"). The Commission issued Final Determinations on April 22, 2020 and December 3, 2020, finding no infringement of the '052 and '404 patents and infringement of the '223 patent. *See In the Matter of Certain Movable Barrier Operator Systems and Components Thereof*, Inv. No. 337-TA-1118, 2020 WL 7223401 (Dec. 3, 2020) (Final); *In the Matter of Certain Movable Barrier Operator Systems and Components Thereof*, Inv. No. 337-TA-1118, 2020 WL 1987053 (Apr. 22, 2020) (Final).

Chamberlain appeals the Commission's Final Determination of April 22, 2020 regarding the '052 patent and the '404 patent. Nortek appeals the Commission's Final Determination of December 3, 2020 regarding the '223 patent.

With respect to the '052 patent, which has expired, we vacate and remand for the Commission to dismiss the infringement claim as moot. We also vacate and remand the Commission's determination concerning the '404 patent because it is based on the application of an incorrect construction of "movable barrier operator." We affirm the Commission's determination that Nortek infringed the '223 patent.

I

A

The patents involved here teach features of movable barrier systems, such as automatic garage door openers. The '052 patent, entitled "Post-Automatically Determined User-Modifiable Activity Performance Limit Apparatus and Method," discloses a control system combining automatic calibration and manual calibration adjustments. In particular, the described control system automatically determines a safety threshold at which to stop operating (thereby preventing the movable barrier from closing when its path is blocked) while still permitting the user to

manually adjust the automatically determined threshold level. The '052 patent expired on April 11, 2022, during the pendency of this appeal.

The '404 patent, entitled "Movable Barrier Operator and Transmitter with Imminent Barrier Moving Notification," teaches a movable barrier operator that plays a sound – for instance, an alarm – indicating that a barrier is imminently about to move, but only does so when the barrier is operated remotely. The sound is not played when the movable barrier operator is operated locally. The system determines whether to sound the imminent barrier warning by distinguishing between whether it received a signal from a remote source, such as a smartphone, or from a local source, such as a button on a garage wall.

Figure 1 from the '404 patent depicts a garage door opener practicing the invention:



**FIG. 1**

Item 12 in the figure is a "head unit" and item 40 is a "wall station." The head unit is connected to the wall station by a wire, item 41.

Chamberlain asserted claim 11 of the '404 patent, which recites:

> A movable barrier system with a moving-barrier imminent motion notification, the system comprising:
>
> [a] a movable ba[rri]er operator connected to control movement of a movable barrier between a first position and a second position;
>
> [b] the *movable barrier operator* comprising: a communication connection comprising at least one of the group consisting of: a direct wireless connection to a transmitter, *a local wired connection*, a system wired connection, a network connection, and a wireless communication system connection; and
>
> [c] a *processor* configured to determine whether a received command for a closing the movable barrier was received from at least one of the system wired connection, the network connection, and the wireless communication system connection;
>
> [d] the processor configured to effect the closing of the movable barrier in combination with operating a moving barrier imminent motion notification in response to determining that the received command for the closing was received from at least one of the system wired connection, the network connection, and the wireless communication system connection;

[e] the processor configured to determine whether the received command for the closing was received from at least one of the direct wireless connection to the transmitter and the local wired connection;

[f] the processor configured to effect the closing of the movable barrier without operating the moving-barrier imminent motion notification in response to determining that the received command for the closing was received from at least one of the direct wireless connection to the transmitter and the local wired connection.

(Element labels and emphasis added)  The parties' dispute largely centers on element [b].

Each of the products Chamberlain accuses of infringing the '404 patent (which we will refer to as the "'404 Accused Products") has a ceiling-mounted head unit containing a motor and a processor, a wall station with a button and a processor, wires connecting the head unit and the wall station, and an alarm system.  All of the '404 Accused Products, except for the Mighty Mule MM9333H and MM9333HA, also have a Wi-Fi receiver in the wall station.

The '404 Accused Products can be subdivided into two categories.  First are the "'404 Original Products," which include private label products.  In the '404 Original Products, the processor in the head unit performs the functions described in elements [c]-[f] of claim 11 of the '404 patent.  Second are the "'404 Alternative Products," which incorporated changes Nortek made to the software of the '404 Original Products near the end of fact discovery.  The '404 Alternative Products differ from the '404 Original Products only in their software; the hardware is identical.  Consequently, and pertinent to the issues before us, for the '404 Alternative Products the processor in the wall station

performs the functions described in elements [c]-[f] of claim 11, rather than the processor in the head unit doing so, as in the '404 Original Products.

The '223 patent, entitled "Movable Barrier Operator with Energy Management Control and Corresponding Method," teaches a movable barrier operator system with at least two different "operating modes," in which one of the operating modes consumes less energy. Chamberlain asserted claims 1 and 21, which are identical in pertinent part. Claim 1 recites:

> A movable barrier operator apparatus comprising:
>
> a power supply that operably couples to at least one source of alternating current;
>
> an obstacle detector; and
>
> a movable barrier operator which includes a controller, the movable barrier operator operably coupled to the power supply, receives operating power from the power supply and has at least a first and a second mode of energy consumption operation and being further configured and arranged to:
>
> selectively open and close a corresponding movable barrier; and
>
> develop an obstacle detector operating mode control signal from the controller as a function of movable barrier operator system state information that indicates whether the barrier is open or closed, the obstacle detector operating mode control signal being operable to directly control the energy usage of the obstacle

detector, the control signal from the controller developed as a result of the state information, the state information selected from the group consisting of motor state information, time information, transmission state information, voltage state information, switch state information and combinations thereof,

the obstacle detector operably coupled to the power supply and to the movable barrier operator, receives operating power from the power supply, and has a plurality of operating modes, wherein at least some of the operating modes have different energy usages, and wherein the obstacle detector is directly responsive to the movable barrier operator obstacle detector operating mode control signal such that:

*during the first mode of energy consumption operation, the obstacle detector operates using a first energy usage*; and

*during the second mode of energy consumption operation, the obstacle detector operates using a second energy usage*, wherein the operating power used in one of the energy usages is less than the power used by the other energy usage.

(Emphasis added)

Chamberlain asserted the '223 patent against multiple Nortek branded and private label garage door openers (the "'223 Accused Products").

## B

A Commission administrative law judge ("ALJ") issued a claim construction order construing, as relevant here, the term "movable barrier operator," as used in the '404 patent, and "operates," as used in the '223 patent. The ALJ construed "movable barrier operator" according to its plain and ordinary meaning, rejecting Nortek's proposal, which would have narrowed the movable barrier operator to "an assembly that contains a motor to operate a movable barrier, also known as a *head unit*." J.A. 26 (emphasis added). The ALJ explained that "[t]he only time the specification references a head unit in relation to the movable barrier operator is as a non-limiting 'example.'" J.A. 26 (quoting '404 patent at 5:36-38). Under the ALJ's construction, therefore, a wall station could function as a movable barrier operator.

The ALJ concluded no construction was needed for "operates" because its plain and ordinary meaning was clear. She rejected Nortek's proposal that "operates" means "[w]orks or functions," a construction she thought would improperly import a requirement that the obstacle detector must always be energized to a level sufficient to perform "work" or perform its ordinary obstacle-detecting functions. J.A. 19 (citing '223 patent at 6:34-38). The ALJ further explained that the specification undermined Nortek's proposed construction, observing that it disclosed an embodiment of an obstacle detector that is only intermittently functional in its low-energy mode.

Following a hearing, the ALJ issued an Initial Determination on the merits, finding no violation of § 1337 with respect to any of the three asserted patents. Regarding the '052 patent, the ALJ found the asserted claim was invalid due to obviousness. On the '404 patent, the ALJ concluded – in contradiction to her previous claim construction order – that "the 'movable barrier operator' of claim 11 does not encompass a 'wall station' that is found in a 404 Accused

Product." J.A. 75. She now found the "movable barrier operator" to be limited to the head unit "as a matter of claim construction." J.A. 76 (capitalization altered); *see also* J.A. 101-02. Because Chamberlain identified a processor in the wall station as satisfying elements [c] through [f] in the '404 Alternative Products, there was no "movable barrier operator" in the '404 Alternative Products, and they did not infringe. The ALJ also found that Chamberlain abandoned its argument that the wires connecting the wall station and the head unit constitute the "local wired connection" of element [b], and further that Chamberlain's contention that "a button on the wall station" satisfied that element was untimely. Thus, all of the '404 Accused Products did not infringe claim 11.

Finally, the ALJ found that the '223 Accused Products did not "operate" in a low-energy mode, because the obstacle detectors could not perform any function when they were in what Chamberlain alleged was the low-energy mode. Therefore, the '223 Accused Products did not infringe. This conclusion appeared to be in tension with the ALJ's view of the claims at the time of claim construction, when she had rejected Nortek's proposal to import a "works or functions" requirement into the term "operates."

Chamberlain petitioned for Commission review of the ALJ's findings in the Initial Determination, and Nortek filed a contingent petition. In a Final Determination issued on April 22, 2020, the Commission adopted the ALJ's findings and conclusions for the '052 patent (finding invalidity) and the '404 patent (finding no infringement). The Commission addressed the '223 patent in a separate Final Determination issued on December 3, 2020, in which it disagreed with the ALJ's application of the term "operates," explaining that she "diverged from the plain meaning . . . when . . . requir[ing] the obstacle detector to perform some function or operation when it is in the lower energy mode." J.A. 360. The Commission concluded that under the

correct application of the claim construction the '223 Accused Products infringe claims 1 and 21.

Chamberlain and Nortek both timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(6).

## II

We review the Commission's legal determinations, including its claim construction, de novo and its factual findings for substantial evidence. *See Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003). We review the Commission's procedural and evidentiary decisions, including forfeiture determinations, for abuse of discretion. *See Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1370 (Fed. Cir. 2001); *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1031 (Fed. Cir. 2000).

## III

We consider the Commission's determinations on each patent in turn. First, the parties agree that the expiration of the '052 patent rendered their dispute regarding that patent moot. Second, we vacate the Commission's determination regarding the '404 patent because its analysis relied on an incorrect construction of the claim term "movable barrier operator." Finally, we affirm the Commission's determination regarding the '223 patent because it correctly applied the plain and ordinary meaning of "operates" as used in that patent.

## A

The '052 patent expired on April 11, 2022. Because the Commission can only grant prospective relief, and because its determinations do not have preclusive effect in district courts, Chamberlain can no longer receive the relief it requested from the Commission (i.e., an exclusion order). *See Hyosung TNS Inc. v. Int'l Trade Comm'n*, 926 F.3d 1353, 1358-59 (Fed. Cir. 2019). Hence, as the parties agree,

Chamberlain's appeal is moot.  Accordingly, we vacate the portion of the Commission's Final Determination of April 22, 2020 addressing the '052 patent and remand so the Commission can dismiss the action, in relevant part, as moot.  *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950).

B

Chamberlain argues that the Commission made two errors with respect to the '404 patent.  First, the Commission erred in adopting the ALJ's second construction of "movable barrier operator," which limited the term to a "head unit" and excluded the "wall station."  Second, the Commission erred in adopting the ALJ's conclusion that Chamberlain abandoned its "local wired connection" infringement theory and tried to replace it with an untimely, and meritless, "button" theory in its post-hearing brief.  We agree with Chamberlain that the ALJ applied an incorrect construction for "movable barrier operator," which impacted the entire infringement analysis for the '404 patent, including the ALJ's forfeiture decision.  Thus, we vacate the portion of the Commission's Final Determination of April 22, 2020 adopting these findings by the ALJ and remand to the Commission for further proceedings based on the proper construction.[1]

---

[1]    We disagree with the ALJ and Nortek that Chamberlain forfeited its arguments regarding the scope of "movable barrier operator."    Chamberlain consistently maintained that the "movable barrier operator" in the '404 Accused Products may be housed within the head unit and/or the wall unit.  In its claim construction brief, for example, Chamberlain expressly stated that "the movable barrier operator" is "not . . . limit[ed] . . . to any specific assembly or arrangement."  J.A. 10111.  In its pre-hearing brief, Chamberlain argued that the "movable barrier

In the post-hearing Initial Determination, the ALJ concluded, as a matter of claim construction, that the "movable barrier operator" cannot include a processor located within the system's wall station, despite previously having found that the term should have its plain and ordinary meaning. *See* J.A. 76 ("[A]s a matter of claim construction, 'movable barrier operator' is distinct from 'wall station.'") (capitalization altered); J.A. 101-02 ("As a matter of claim construction, the 'movable barrier operator,' which possesses the claimed 'processor,' does not encompass a wall station."). We agree with Chamberlain that the narrow construction the ALJ adopted in the Initial Determination is erroneous.

Nothing in the '404 patent's claims or written description would demonstrate to a person of ordinary skill in the art that the "movable barrier operator" is necessarily limited to head units, to the exclusion of wall stations. The term is not defined in the specification, nor was there any clear and unambiguous disclaimer of claim scope during prosecution. Therefore, the correct construction is the term's plain and ordinary meaning as understood by a skilled artisan in the context of the patent. *See Thorner v.*

---

operator" should not be limited to the head unit and that the '404 Alternative Products contained "a movable barrier operator comprising a head unit and a wall station." J.A. 10621-23. Chamberlain solicited testimony at the hearing from its expert supporting this contention. *See* J.A. 1291 (Chamberlain's expert testifying that wall station in '404 Alternative Products is "very much part of the operator. . . . [I]t actually implements some of the electronics circuitry that is required for the system."). After the hearing, Chamberlain argued that its expert had demonstrated that "the circuitry in the wall station of the '404 Accused Products is part of the claimed "movable barrier operator" because it "receives, processes, and effects commands, including commands to close the garage door." J.A. 13835.

*Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  Moreover, as there is no contrary indication in the patent, the "movable barrier operator" limitation may be satisfied by multiple discrete components functioning together.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1309 (Fed. Cir. 2005) ("Although the sole embodiment described in the specification depicts a unitary structure, the mere depiction of a structural claim feature as unitary in an embodiment, without more, does not mandate that the structural limitation be unitary.") (internal citation omitted).  The applicability of this default rule is confirmed by the language of the claim, which describes the "movable barrier operator" as "comprise[d]" of functional components – a processor and connections to other components in the broader movable barrier system.

The only support the ALJ identified for her narrow claim construction was an embodiment in the specification, in which the "movable barrier operator" is, indeed, the "head unit." '404 patent at 5:38 & Fig. 1.  But it would be apparent to anyone skilled in the art that this embodiment, which is a garage door opener, is not limiting but illustrative, as the patent teaches movable barrier systems that are not even garage door systems.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); '404 patent at 12:13–17 ("[A]lthough the described embodiment included a garage door, various types of movable barrier systems can employ these teachings, for example, swinging gates, rolling gates, rising gates, and the like.").  In fact, in her original claim construction order, the ALJ correctly observed that this very same embodiment was exemplary. *See* J.A. 26.

Therefore, we conclude, as the ALJ did originally, that the correct construction of "movable barrier operator" as

used in the '404 patent is its plain and ordinary meaning, which is not limited to a single, discrete physical assembly or housing, and is not limited to just a head unit. On remand, the Commission will need to apply the correct claim construction to determine whether the '404 Accused Products contain a "movable barrier operator."

The ALJ's incorrect construction of "movable barrier operator" affected her entire infringement analysis, with respect to both the '404 Original Products and the '404 Alternative Products.[2] Because the Commission adopted the ALJ's findings and conclusions, its analysis is likewise infected by the erroneous claim construction. On remand, therefore, the Commission will need to revisit the entirety of its evaluation of the '404 infringement issue.

We reach this conclusion as to the proper scope of the remand for several reasons. First, the ALJ's incorrect construction of "movable barrier operator" led her to reject Chamberlain's contention that the Wi-Fi receiver located in the wall station of the '404 Accused Products constitutes a "wireless communication system connection" meeting element [b]. *See* J.A. 83 (ALJ acknowledging "[t]here is . . . no dispute that the 404 Accused Products (with the exception of the Mighty Mule MM9333H and MM9333HA) have wireless communication system connections in their wall stations in the form of Wi-Fi receivers" but nonetheless

---

[2]   Both Chamberlain and Nortek argue, as alternatives to their preferred dispositions (reversal and affirmance, respectively), that the case should be remanded for further proceedings with respect to whether the '404 Accused Products infringe. We agree this is the appropriate outcome here. *See generally Beloit Corp. v. Valmet Oy*, 742 F.2d 1421, 1423 (Fed. Cir. 1984) (noting we do not "sit to review what the Commission has not decided").

finding these connections cannot satisfy element [b] since they are not in head units).[3]

Second, the ALJ relied on her incorrect construction to reject Chamberlain's argument that "a button on a wall station in isolation qualifies as the claimed 'local wired connection.'" J.A. 87. The ALJ's reasoning makes clear it was based on the narrow construction of "movable barrier operator" we have now rejected. *See id.* ("While such a button connects to the 'movable barrier operator' (i.e., head unit) via a set of wires running from the wall station, the button itself is not a 'local wired connection' that resides, at least in part, in a 'movable barrier operator' (i.e., head unit) of a 404 Accused Product, as required by claim 11[b].").

Third, the ALJ's determination that the "button" version of Chamberlain's local wired connection theory of infringement was forfeited was also tainted by the ALJ's erroneous claim construction. In its pre-hearing brief, Chamberlain identified the "local wired connection" in the '404 Accused Products as the "communication connections with a wall station." J.A. 10619. In its post-hearing brief, Chamberlain instead identified only "a button on the wall station" as the accused "local wired connection." J.A. 13840-41. The ALJ's conclusion that these were materially distinct theories of infringement – and hence Chamberlain had abandoned its original theory and was trying to replace it, in an untimely manner, with a new post-hearing theory – was intertwined with her incorrect claim construction, which mandated that the movable barrier operator be

---

[3] With the revival of Chamberlain's Wi-Fi theory of infringement, the Commission will need to reevaluate if the LDCO850 and LDCO850A are representative of the Mighty Mule MM9333H and MM9333HA products. *See* J.A. 111-16.

located solely in the head unit, and not (even in part) in the wall station.[4]

---

[4]    This relationship is evident, we believe, from the ALJ's handling of disputes relating to the opinions of Chamberlain's expert, Dr. Subramanian. After the merits hearing, but before the issuance of the Initial Determination, Nortek moved to strike the purportedly new infringement theory Dr. Subramanian had advocated at the hearing, where he had opined that the "movable barrier operator" included components spread across both the head unit and the wall station. The ALJ denied the motion, firmly stating that her claim construction order had already "explicitly rejected Nortek's own attempted construction of a 'movable barrier operator' as confined to a head unit," adding "[i]t is difficult to understand why Nortek made such an obviously unsupported Motion to strike testimony when the motion is clearly wrong in its assertions." J.A. 14269-70. The motion lacked merit because, at that point in the proceedings, the ALJ's operative construction expressly *did not require* that the movable barrier operator had to be located in the head unit. *See* J.A. 26. Later, however, in the Initial Determination, the ALJ changed her construction to require the movable barrier operator to be in the head unit, and then held: "Dr. Subramanian's reference to a wall station 'button' as a 'local wired connection' in the context of element[b] of claim 11 was based on a clearly erroneous interpretation of the Markman Order's guidance on 'movable barrier operator,' as discussed above." J.A. 85. Had the ALJ adhered to her earlier, correct "plain and ordinary" meaning construction of movable barrier operator, she may have rejected the contention that the "button" theory was new and untimely, just as she had previously rejected Nortek's closely-related motion to strike.

Accordingly, we vacate and remand the portion of the Commission's Final Determination of April 22, 2020 finding that the '404 Accused Products do not infringe. On remand, the Commission must evaluate infringement based on the proper construction of "movable barrier operator."

C

Nortek appeals the Commission's conclusion that the obstacle detector described in the '223 patent may "operate" even when it is turned off and unable to perform any function. In particular, Nortek faults the Commission for applying a new, incorrect claim construction of "operates." We disagree. Instead, we hold that the Commission correctly construed "operates" according to its plain and ordinary meaning and, accordingly, made no error in concluding that the asserted claims of the '223 patent do not require any obstacle-detection functionality in the low-energy operating mode.

The '223 patent teaches that an obstacle detector may not be functional in all operational modes. *See* '223 patent at 10:13-16 ("[A] photobeam-based obstacle detector . . . can be configured to permit reduction of the energization cycle and/or *complete powering down* to accomplish a reduced energy consumption mode of operation.") (emphasis added). We have been provided no persuasive reason why a person of ordinary skill would read the '223 patent claims to exclude this embodiment. To the contrary, the intrinsic evidence is entirely consistent with the Commission's construction of "operates" – which is the same plain and ordinary meaning construction the ALJ had initially adopted in her claim construction order – "which does not require that the obstacle detector continue to function or detect objects in its lower-energy state." J.A. 360. We find no error in the Commission's conclusion that the ALJ's Initial Determination of non-infringement had to be reversed "because it misapplies the plain meaning of 'operates' in the context of the '223 patent." *Id.*

Nortek further argues that the Commission violated the Administrative Procedure Act ("APA") because it did not provide Nortek adequate notice of, and a chance to respond to, the Commission's construction of "operates." *See* 5 U.S.C. §§ 554(b)(3), (c), 556(d). Parties to a Commission proceeding, just like parties to an *inter partes* review before the Patent Trial and Appeal Board, are entitled to notice and an opportunity to respond before the agency adopts a construction of a term that differs from a construction to which the parties had agreed. *See Qualcomm Inc. v. Intel Corp.*, 6 F.4th 1256, 1262-63 (Fed. Cir. 2021).

Here, the Commission complied with the APA. The parties themselves put the meaning of "operates" into dispute. Chamberlain, in its petition requesting Commission review, wrote that "[t]he ALJ's finding that the '223 Accused Products do not infringe claims 1 and 21 of the '223 patent is based on a single legal error: an erroneous[ly] applied construction of the term 'operates.'" J.A. 15123. Nortek responded by arguing that "Chamberlain's proposed construction of 'operates' as 'is energized' is overly broad and is inconsistent with the specification and the claims." J.A. 15344. "Operates" was not presented to the Commission as an agreed-upon term but, instead, as one whose proper construction was disputed. Both parties had notice of the legal proposition that an agency "may adopt a claim construction of a disputed term that neither party proposes without running afoul of the APA." *Qualcomm*, 6 F.4th at 1262. Both parties' views on the proper construction were heard. Accordingly, there was no APA violation.

Other than the Commission's construction of "operates," Nortek does not otherwise challenge the Commission's infringement evaluation. Because we agree with the Commission's claim construction, we affirm the Commission's conclusion that "the obstacle detector in each '223 Accused Product 'operates' in both energy modes" as required by the asserted claims of the '223 patent. J.A. 360. The

Commission's determination that the '223 Accused Products infringe is affirmed.

### IV

We have considered both parties' remaining arguments and find them unpersuasive. Thus, for the foregoing reasons, we affirm in part and vacate in part the Commission's Final Determinations and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

Costs assessed against Nortek.